In the Matter of LANDSCAPING SERVICES, INC., ("LSI"), Debtor.

LANDSCAPING SERVICES, INC., Plaintiff,

v.

Edward W. POOLE, Defendant.

Edward W. POOLE, Plaintiff,

v.

Charles R. FISH, Individually, C.R. Fish Equipment Co., Inc., and Charles R. Fish, President, Landscaping Services, Inc., Defendants.

Bankruptcy No. M–83–00038–5.

Adv. Nos. M–83–0215–AP, M–83–0303–AP.

United States Bankruptcy Court, E.D. North Carolina.

Oct. 19, 1983.

Edward D. Gaskins, Jr., Raleigh, N.C., for Landscaping Services, Inc.

S. Allen Patterson, Raleigh, N.C., for Edward W. Poole.

Robert B. Schwentker, Raleigh, N.C., for Charles R. Fish, individually and as President of LSI, and C.R. Fish Equipment, Co., Inc.

## MEMORANDUM OPINION

THOMAS M. MOORE, Bankruptcy Judge.

The two adversary proceedings referred to above were consolidated for trial by Order of this Court entered on July 20, 1983.

On October 11, 1983, a hearing was conducted on a Motion to Dismiss and a Motion for Summary Judgment filed by Mr. Edward W. Poole in Adversary Proceeding No. 83–0215–AP. At the hearing, a motion was made for summary judgment by Edward W. Poole against Charles R. Fish Equipment Co., Inc., and a motion was made for summary judgment by C.R. Fish Equipment Co., Inc., against Edward W. Poole. All counsel consented to the Court's ruling on the verbal motion and consented to the jurisdiction of this Court.

Counsel for the parties stipulated to the following facts:

## FINDINGS OF FACT

LSI is a North Carolina corporation and it was organized and existing as such prior to December, 1981. On or about December 1, 1981, Mr. C.R. Fish was a majority stockholder in LSI and Mr. Edward W. Poole was a minority stockholder in LSI. Their respective stock ownership interest in LSI was fifty-one percent (51%) and forty-nine percent (49%). The board of directors of LSI consisted of Mr. C.R. Fish, Mr. Fish's wife and Mr. Edward W. Poole.

FEC is a North Carolina corporation and it was organized and existing as such prior to December, 1981. On or about December 1, 1981, Mr. C.R. Fish was the sole or majority stockholder of FEC and the board of directors of FEC consisted of Mr. and Mrs. Fish and such other parties as Mr. Fish elected.

Prior to December 1, 1981, FEC had made substantial unsecured loans to LSI. According to the proof of claim filed by LSI, the total unsecured indebtedness owed by LSI to FEC on December 1, 1981, was One Hundred Forty-Two Thousand Thirteen and 15/100 Dollars ($142,013.15).

On or about December 1, 1981, a board of directors meeting for LSI was conducted with Mr. and Mrs. Fish and Mr. Poole all present. At the meeting, Mr. Fish introduced a resolution proposing to secure the indebtedness owed by LSI to FEC. Mr. Poole objected to Mr. Fish voting on the resolution. Mr. Fish refused to refrain from voting and voted in favor of the resolution along with Mrs. Fish. Mr. Poole voted against the resolution. Mr. Fish re-

corded the vote as being in favor of the resolution to provide FEC a security interest in substantially all of the assets of LSI to secure the pre-existing debt owed FEC by LSI and to secure future advances of credit to be extended by FEC to LSI. At the time of the vote on the resolution, Mr. C.R. Fish owned fifty-one percent (51%) of the stock in LSI and was a majority stockholder in FEC.

On December 1, 1981, a note was executed by LSI to FEC for Two Hundred Fifty Thousand and No/100 Dollars ($250,000.00). The note was secured by a security agreement granting FEC a security interest in substantially all of the property of LSI for the purpose of securing the pre-existing debt owed to FEC by LSI and to secure future advances from FEC to LSI.

The proof of claim filed by FEC reflects that an additional sum of Twenty-One Thousand Seventy-Four and 34/100 Dollars ($21,074.34) in interest and principal was advanced by FEC to LSI from December 1, 1981, through January, 1983.

The proof of claim filed by FEC in the case file does not have a copy of the UCC–1 reflecting the perfection of FEC's security interest in the property of LSI, but it is assumed that such security interest was in fact properly perfected.

LSI filed a petition under Chapter 11 of the Bankruptcy Code in January, 1983.

## ISSUE

The issue is whether the granting of the security interest to FEC by LSI in December, 1981, is prohibited by N.C.GEN.STAT. § 55–22.

## CONSIDERATION OF ISSUE

The following provisions of the North Carolina Business Corporation Act (Chapter 55, North Carolina General Statutes) are applicable to the issue under consideration:

(a) Subject to the provisions of subsection (b) hereof, except with the consent of the holders of a majority of all the shares outstanding, regardless of limitation on voting rights, other than the shares held by the adversely interested party, a corporation shall not, directly or indirectly, make any loan of money or property to, or guarantee or otherwise secure the obligation of:

(1) Any directors or officers of the corporation; or

(2) Any corporation of which the officers and directors of the lending or securing corporation own more than fifty percent (50%) of the outstanding securities of any class; or

(3) Any dominant shareholder or any other corporation of which said shareholder is a dominant shareholder, unless that corporation is a subsidiary of the lending or securing corporation; or

(4) Any person upon the security of the shares of any corporation mentioned in subdivisions (2) and (3) of this subsection. A sale on credit in the ordinary course of business is not a loan within the meaning of this section.

(b) If all shareholders, regardless of limitation on voting rights, are adversely interested in the proposed loan guaranty, or other form of security, such transaction may be entered into by the corporation only with the consent of all such shareholders.

(c) The provisions of this section do not apply to loans, guaranties, or other forms of security extended by banks, industrial banks, building and loan associations, land and loan associations, credit unions or insurance companies, or to loans permitted under any statute regulating any special class of corporations.

N.C.GEN.STAT. § 55–22

(f) The directors of a corporation who vote for or assent to the making of any loan or guaranty or other form of security in violation of G.S. 55–22 shall be jointly and severally liable to the corporation for the repayment or return of the money or value loaned, with interest thereon at the rate of six percent (6%) a year until paid, or for any liability of the corporation upon the guaranty.

N.C.GEN.STAT. § 55–32

Officers and directors shall be deemed to stand in a fiduciary relation to the

corporation and to its shareholders and shall discharge the duties of their respective positions in good faith, and with that diligence and care which ordinarily prudent men would exercise under similar circumstances in like positions.

N.C.GEN.STAT. § 55–35

The language contained in N.C.GEN. STAT. § 55–22 is very broad and severely restricts the right of a corporation to lend money or property to, or guarantee or otherwise secure the obligation of a dominant shareholder, directors or officers of any corporation of which the officers and directors of the lending or securing corporation own more than fifty percent (50%) of the outstanding stock of any class. Such a restriction is consistent with the fiduciary relationship created by N.C.GEN.STAT. § 55–35 between the corporation and directors of the corporation.

In the present case, Mr. C.R. Fish owned more than fifty-one percent (51%) of the stock in LSI and FEC at the time the board of directors of LSI voted to secure its obligation to FEC. Mr. Poole specifically voted against the resolution and, in fact, specifically objected to Mr. Fish voting on the resolution at all. The consent of a majority of the outstanding shares of stock in LSI was not obtained.

It has been argued that, although the language of N.C.GEN.STAT. § 55–22 may be sufficiently broad to include the transaction under consideration, the statute was only intended to apply to "third party" transactions, such as when corporation A, whose majority stockholder is B, Guarantees or secures a loan by a third party to B or a corporation in which B owns a majority of the stock.

It should be noted that subparagraph (c) of N.C.GEN.STAT. § 55–22 specifically exempts certain type corporations (lending institutions) from its terms. This exemption permits normal commercial banking transactions to continue without such restriction.

CONCLUSIONS OF FACT AND LAW

The Court concludes that N.C.GEN. STAT. § 55–22 does not apply to the facts of this case. LSI is not securing the obligation of FEC. LSI is securing its own obligation to FEC. A careful reading of N.C.GEN.STAT. § 55–22 will reveal that it is not drafted or designed to prevent a corporation from granting a security interest in its own property to secure its own obligation to another party.

The motion for summary judgment in favor of FEC and against Mr. Edward W. Poole should be granted.

An appropriate judgment will be entered.